# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **TAYLOR M. WALKER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-16-489-RAW-SPS |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of the Social** ) | |
| **Security Administration,**[1] ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

The claimant Taylor M. Walker requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 8, 1982, and was thirty-three years old at the time of the administrative hearing (Tr. 68, 1850). She completed the eleventh grade, and has worked as a cashier checker/clerk (Tr. 60, 204). The claimant alleges that she has been unable to work since December 31, 2011 due to epileptic seizures, bi-polar disorder, post-traumatic stress disorder, depression, and anxiety (Tr. 203).

## Procedural History

On June 28, 2013, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-8. Her application was denied. ALJ Luke Liter held an administrative hearing and determined the claimant was not disabled in a written opinion dated July 2, 2015 (Tr. 52-62). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), *i. e.*, she could lift/carry fifty pounds occasionally and twenty-five pounds frequently, and stand/walk and sit for 6 hours in an 8-hour workday, but with the additional postural limitations of occasionally climbing ramps/stairs and no climbing ropes/ladders/scaffolds. Furthermore, he stated that the claimant was unable to tolerate

3

exposure to hazards such as unprotected heights or dangerous moving machinery, and that driving should not be part of her job duties. Finally, he limited her to simple and some complex tasks (defined as semi-skilled work with a specific vocational preparation (SVP) of 3-4); found that contact with the public, co-workers, and supervisors should be limited to occasional; and determined she would be absent from work one day per month (Tr. 57). The ALJ therefore concluded that the claimant could return to her past relevant work as a cashier/checker (Tr. 60). Alternatively, he found that the claimant was not disabled because there was other work she could perform in the economy, *e. g.*, hand packager, dietary aide, and order puller (Tr. 61).

## Review

The claimant contends that the ALJ erred by: (i) improperly evaluating her credibility, (ii) failing to properly assess her RFC, and (iii) failing to fully develop the record.[3] The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of obesity, seizure disorder, bipolar disorder, depression, and anxiety (Tr. 54). The specific medical evidence relevant to this appeal reflects that the claimant has received mental health treatment, including diagnoses of bipolar disorder, anxiety disorder, and depressive disorder, accompanied by signs of depression, irritability, and anxiety (Tr. 339). In 2011,

---

[3] Under Local Civ. R. 7.1(c), "[b]riefs exceeding fifteen (15) pages in length shall be accompanied by an indexed table of contents showing headings and subheadings and an indexed table of statutes, rules, ordinances, cases, and other authorities cited." The claimant's brief fails to comply with this rule, but the undersigned Magistrate Judge nevertheless elects to address the merits of the claimant's contentions.

her counselor wrote that she had a lot of problems she had never faced, and needed to talk with someone about them (Tr. 346). On May 28, 2012, the claimant was admitted to the hospital with an altered mental status, noting that she may have had a seizure (Tr. 466). She was stabilized and discharged (Tr. 468). She also presented to the hospital with an altered mental status on March 22, 2013, stating it had been going on for three days (Tr. 507). She was diagnosed with an altered mental status, resolved; headaches, with a history of migraines; and a history of seizures (Tr. 508). A CT of the brain was normal (Tr. 511).

On July 30, 2013, the claimant presented to the hospital with a headache, noting she had a history of migraines. She was discharged the next day with a medication prescription for her headache after being administered an injection for treating migraine headaches (Tr. 540-542).

On October 8, 2013, Dr. Teresa Horton conducted a mental status examination of the claimant (Tr. 571). She noted the claimant reported having a driver's license, but that she typically does not drive, and had avoided driving for two years (Tr. 571). Dr. Horton noted, *inter alia*, that the claimant appeared to think in "all or nothing and/or extremes," and that she had a "history of feeling as though others are watching and judging her, and conspiring against her" (Tr. 573). She diagnosed the claimant with borderline personality disorder; PTSD, chronic, mild to moderate; and bipolar disorder, Type II, currently depressed, mild to moderate (Tr. 574). Her prognosis was that the claimant appeared capable of understanding, remembering, and managing most simple and complex instructions and tasks, though would likely not do so while managing stress well in the

5

workplace; that she appeared capable of adequate social/emotional adjustment in most social settings; and that she responds poorly to stressful situations, likely associated with seizure activity (Tr. 574).

Treatment notes further reflect continued treatment of the claimant for hypertension and epilepsy.  A December 30, 2013, treatment note reflected a seizure the day previously, that she was in good compliance with her medications and with not driving a motorized vehicle, and that she did not have a seizure until she ran out of her medication (Tr. 621).  On January 28, 2014, notes reflect the claimant's most recent seizure was one month previous, lasting approximately five minutes, and that there had been no improvement in intensity or frequency of her seizures (Tr. 617).  Furthermore, she was noted to have good compliance with taking medication as recommended and not driving a motorized vehicle (Tr. 617).  She was also advised to quit smoking, as smoking increased her risk of stroke (Tr. 628).  Treatment notes from July 17, 2014 reflect that the claimant drove with her two children that day, but that office staff drove her home for safety precautions (Tr. 667).  The claimant underwent an EEG in August 2014, and seizure activity occurred during it, but the test did not reflect epileptic seizure activity. The neurologist instead believed the claimant's tremors that had begun the previous month were the result of the medication Abilify, and wanted to adjust a number of her medications (Tr. 671).

State reviewing physicians determined that the claimant could perform medium work but should avoid even moderate exposure to hazards, in light of her history of seizures (Tr. 118, 453-456).  Additionally, a reviewing physician determined in a mental

RFC assessment that she had moderate limitations in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public, ultimately concluding that she could understand, remember, and carry out simple and some complex instructions with routine supervision, relate to supervision and a limited number of coworkers on a superficial work basis, have moderate limitations in relating to the general public, and can adapt to a work environment (Tr. 119-120).

The claimant first contends that the ALJ erred in analyzing her credibility because he improperly relied on minimal daily activities and failure to obtain seizure medication, *i. e.*, noncompliance. Under the applicable standard at the time of the ALJ's decision, a credibility determination would be entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). An ALJ could disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But the ALJ's credibility findings were required to be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. A credibility determination "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). In this case, the Court finds that the ALJ set out the appropriate credibility factors, and cited evidence supporting his

7

reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, the ALJ gave clear and specific reasons that were specifically linked to the evidence in the record. Specifically, he noted that: (i) her testimony regarding her driving and the evidence in the record were not consistent; (ii) she did well with managing her seizures until she ran out of medications, and her failure to obtain her medications affected her credibility; (iii) her alleged seizure frequency was not consistent with the evidence in the record, was much less frequent than she alleged, and an EEG in 2014 was unremarkable, all of which significantly reduced her credibility; and (iv) her credibility was "moderately reduced" because she had not been hospitalized and there were no emergency room visits for her headaches, and they had not been formally diagnosed as migraines. The undersigned Magistrate Judge notes there *was* one hospital visit and treatment for a headache, but nevertheless finds that there is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, or that he failed to state his reasoning. As such, the ALJ's determination here is entitled to deference and the undersigned Magistrate Judge finds no error in analyzing the claimant's credibility.[4]

Second, the claimant asserts that the ALJ erred in her RFC assessment because the evidence would suggest a more restrictive RFC and the ALJ failed to account for limitations related to concentration, persistence, and pace, as well as her depression, headaches, and migraines. The undersigned Magistrate Judge finds that the ALJ did not,

---

[4] The undersigned Magistrate Judge notes that the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. The undersigned Magistrate Judge thus finds that even under the new standard, the ALJ properly evaluated the claimant's credibility.

however, commit any error in his analysis. As discussed below, the ALJ noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, and his opinion clearly indicates that he adequately considered the evidence in reaching his conclusions regarding the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

In his written opinion, the ALJ summarized the claimant's testimony and much of the medical evidence. Specifically, he noted the evidence regarding the hospitalization for her altered mental status in 2013, as well as Dr. Horton's consultative examination of the claimant (Tr. 58). He found that the claimant's testimony was not consistent with the evidence in the record, including the alleged frequency of her seizures (Tr. 59). He then assigned moderate weight to the state reviewing physicians who found the claimant could perform medium work, as well as moderate weight to Dr. Horton's mental status exam (Tr. 60).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health &*

9

*Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).  It is true that the ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996).  But here, the ALJ's treatment of the medical evidence in this case meets these standards.  The undersigned Magistrate Judge finds that the ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record, *and still concluded* that she could perform medium work.  *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding.  We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).  The undersigned Magistrate Judge thus finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC.  *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

   Finally, the claimant seems to contend that the ALJ failed to develop the record with regard to her mental impairments because the consultative examiner failed to provide a mental RFC assessment, and because there was no physical consultative examination performed at all.  The ALJ has "broad latitude" in deciding whether or not to

order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). "When the claimant has satisfied his or her burden" of presenting evidence suggestive of a severe impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial[.] Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Id.* [citation omitted]. Here, the claimant has not met her burden.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 9th day of February, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**